**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Jessica Sneed, individually and on behalf of all others similarly situated,<br>Plaintiff, | 1:22-cv-01183 |
| - against - | Class Action Complaint |
| Ferrero U.S.A., Inc.,<br>Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Ferrero U.S.A., Inc. ("Defendant") manufactures, labels, markets, and sells a plastic egg-shaped package with one section containing "Sweet Cream Topped With Cocoa Wafer Bites," and the other consisting of a small toy, under the Kinder Joy brand (the "Product").




SWEET CREAM TOPPED
WITH COCOA WAFER BITES

2. More than half of the packaging is white, which represents milk, with two large "drops" of milk.

3. The rest of the packaging is orange, the same color as the statement, "Surprise Toy Inside."

4. "Sweet Cream Topped With Cocoa Wafer Bites" is in brown font on top of the white background, next to drops of chocolate.

5. The representation as "Sweet Cream" is false, deceptive, and misleading, because the Product does not contain cream.

## I. CREAM

### A. Cream is Made From Dairy Ingredients

6. Cream is understood by consumers as a dairy ingredient.

7. Google Dictionary – based on its leading search engine that discovers the most relevant and accurate information – defines cream as "the thick white or pale yellow fatty liquid which rises to the top when milk is left to stand and which can be eaten as an accompaniment to desserts or used as a cooking ingredient."

8. Merriam-Webster defines cream as the "yellowish part of milk containing from 18 to about 40 percent butterfat."

9. The Britannica Dictionary defines cream as "the thick part of milk that rises to the top; the part of milk that contains fat."

10. Collins Dictionary defines cream as "is a thick yellowish-white liquid taken from milk.

11. Dictionary.com defines cream as "the fatty part of milk, which rises to the surface when the liquid is allowed to stand unless homogenized."

12. The Food and Drug Administration ("FDA"), and identical Illinois regulations, define cream as "the liquid milk product high in fat separated from milk, which may have been adjusted by adding thereto: Milk, concentrated milk, dry whole milk, skim milk, concentrated skim milk, or nonfat dry milk. Cream contains not less than 18 percent milkfat." 21 C.F.R. § 131.3(a).

13. The two main types of cream are sweet cream and sour cream.

14. "Sweet cream" does not mean any sweetener has been added, but that the cream has the naturally sweet flavor of milk, in contrast to a cultured cream such as "sour cream," which has greater acidity.

B. Differences Between Cream and Artificial Cream

15. Cream is known for its "creamy" taste because milkfat contains hundreds of lactones, aroma compounds which contribute to its taste.

16. Artificial cream substitutes milkfat with vegetable oils to reduce cost.

17. These ingredients, like palm and palm kernel oil, are solid at room temperature, and referred to as "hard [vegetable] fats."

18. In production of artificial cream, refined vegetable oils are carefully blended to have some physical properties resembling milkfat.

19. However, artificial cream may also include thickening agents, like gums and starches, salts, such as phosphates to provide buffer control against pH changes that can destabilize the emulsion, oxidation stabilizers, sugar, flavor and protein sources such as whey protein and skim milk.

20. The result of substituting vegetable fats for dairy fat is that the resulting "cream" will provide less satiety, a waxy and oily mouthfeel, and leave an aftertaste.

21. Milkfat melts at mouth temperature (35 °C/95 °F) and does not contribute to a waxy

sensation.

22. In contrast to dairy ingredients with milkfat, vegetable oils do not melt at mouth temperature and leave a waxy mouthfeel.

23. In contrast to fats from dairy ingredients, consumption of vegetable oils is linked to numerous health problems, like increased chances of heart disease and increased cholesterol.

24. Milkfat also contains calcium, vitamins A, D, E, and K, which are absent from hardened vegetable fats.

## II. REPRESENTATION AS "SWEET CREAM" IS MISLEADING

25. Despite labeling the Product as "Sweet Cream…," the Product does not contain cream, as the ingredient list indicates no ingredients that are a source of milkfat.

INGREDIENTS: SUGAR, VEGETABLE OILS (PALM, SHEANUT AND SUNFLOWER), SKIM MILK POWDER, WHEAT FLOUR, COCOA, WHEAT STARCH, COCOA MASS, MALT EXTRACT, LECITHIN AS EMULSIFIER, WHEY PROTEINS, COCOA BUTTER, ARTIFICIAL FLAVORS, AMMONIUM BICARBONATE AND SODIUM BICARBONATE AS LEAVENING AGENTS, SALT.

**INGREDIENTS:** SUGAR, VEGETABLE OILS (PALM, SHEANUT AND SUNFLOWER), SKIM MILK POWDER, WHEAT FLOUR, COCOA, WHEAT GERM, WHEAT STARCH, COCOA MASS, MALT EXTRACT, SOY LECITHIN AS EMULSIFIER, WHEY PROTEINS, COCOA BUTTER, ARTIFICIAL FLAVORS, AMMONIUM BICARBONATE AND SODIUM BICARBONATE AS LEAVENING AGENTS, SALT.

26. Instead of cream, the Product contains artificial cream, derived from hardened vegetable oils, including "Palm, Sheanut and Sunflower [Oils]."

27. Though the Product contains two dairy ingredients, neither are cream.

28. "Skim Milk Powder," listed third, is not "cream" and contains no fat.

29. "Whey Proteins" refers to the watery portion of milk that separates from the curds when making cheese, which contains little to no fat.

30. The Product lacks the nutritive, sensory, organoleptic, and other attributes expected from a product described as "[Sweet] Cream."

## III. CONCLUSION

31. Defendant makes other representations and omissions with respect to the Product which are false or misleading.

32. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

33. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

34. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

35. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

36. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $1.99, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

### Jurisdiction and Venue

37. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

38. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

39. Plaintiff Jessica Sneed is a citizen of Illinois.

40. Defendant Ferrero U.S.A., Inc. is a Delaware corporation with a principal place of business in Parsippany, Morris County, New Jersey.

41. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

42. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, in thousands of locations, in the states covered by Plaintiff's proposed classes.

43. The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

44. Venue is in the Eastern Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Cook County, i.e., Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

## Parties

45. Plaintiff Jessica Sneed is a citizen of Tinley Park, Cook County, Illinois.

46. Defendant Ferrero U.S.A., Inc. is a Delaware corporation with a principal place of business in Parsippany, New Jersey, Morris County.

47. The parent company of Defendant is Ferrero SpA ("Ferrero"), the second largest manufacturer of chocolate and confectionery products in the world.

48. Ferrero consists of 38 subsidiaries, that operate 18 factories, and employ over 40,000 workers.

49. According to the Reputation Institute, Ferrero is one of the most reputable companies in the world.

50. These values originated with founder Pietro Ferrero, a Piedmont (Italy) confectioner and pastry maker, known for his impeccable honesty and commitment to quality.

51. The founder of Ferrero invented Nutella by adding hazelnuts to chocolate to save money during economic shortages in Italy after World War Two.

52. Pietro Ferrero required truthfulness from everyone who worked for Ferrero, and he put the consumer interests above all others.

53. Kinder (Chocolate)[1] is a Ferrero brand of chocolate products introduced in the late 1960s.

54. Kinder chocolate bars contain various fillings, based on milk and hazelnut.

55. The Kinder product line includes the world-famous Kinder Surprise, a hollow milk chocolate egg shell, with a milky interior, containing a toy.

56. The Kinder Joy is the American version of the Kinder Surprise, but has a plastic egg-shaped packaging, internally divided into two halves.

57. One half contains "Sweet Cream Topped With Cocoa Wafer Bites," and the other consists of a small toy.

58. The Kinder product line has seen tremendous success in the United States, and exceeds other brands in popularity.

59. Consumers know they can trust a product from the Kinder brand, and Ferrero, to

[1] "Kinder" is German for "children."

deliver what it promises.

60. The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

61. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Walmart, at locations including 9265 159th St Orland Hills, IL 60487 between February 16, 2022, and February 23, 2022, and/or among other times.

62. Plaintiff believed the Product contained cream, understood as dairy ingredients based on milkfat.

63. Plaintiff bought the Product because she expected it contained cream, understood as dairy ingredients based on milkfat because that is what the representations said and implied.

64. Plaintiff relied on the words, coloring, descriptions, layout, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, and/or claims made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

65. Plaintiff was disappointed because she believed the Product contained cream, understood as dairy ingredients based on milkfat.

66. Plaintiff bought the Product at or exceeding the above-referenced price.

67. Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

68. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

69. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

70. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

71. Plaintiff is unable to rely on the labeling and representations not only of this Product, but for other similar cream-based confections, because she is unsure whether those representations are truthful.

Class Allegations

72. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Arkansas, Montana, Nebraska, Virginia, Georgia, and Minnesota, who purchased the Product during the statutes of limitations for each cause of action alleged.

73. Common questions of issues, law, and fact predominate and include whether Defendant’s representations were and are misleading and if Plaintiff and class members are entitled to damages.

74. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

75. Plaintiff is an adequate representative because her interests do not conflict with other members.

76. No individual inquiry is necessary since the focus is only on Defendant’s practices and the class is definable and ascertainable.

77. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

78. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

79. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

80. Plaintiff incorporates by reference all preceding paragraphs.

81. Plaintiff and class members desired to purchase a product that contained cream, understood as dairy ingredients based on milkfat.

82. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

83. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

84. Plaintiff relied on the representations that the Product contained cream, understood as dairy ingredients based on milkfat.

85. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

86. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the above-referenced consumer protection statute and prohibit the use of unfair or

deceptive business practices in the conduct of trade or commerce.

87. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

88. Defendant intended that each of the members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

89. As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

90. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breach of Contract

91. Plaintiff entered into a contract with Defendant for purchase of the Product.

92. The terms of the contract provided that the Product contained cream, understood as dairy ingredients based on milkfat.

93. Defendant breached the contract because the Product did not meet the terms Plaintiff agreed to.

94. Plaintiff was damaged by the breach, and those damages include the purchase price.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

95. The Product was manufactured, identified, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it contained cream, understood as dairy

ingredients based on milkfat.

96. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

97. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

98. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product contained cream, understood as dairy ingredients based on milkfat.

99. Defendant's representations affirmed and promised that the Product contained cream, understood as dairy ingredients based on milkfat.

100. Defendant described the Product as one which contained cream, understood as dairy ingredients based on milkfat, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

101. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

102. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted family company, known for its transparency to consumers, and not sacrificing quality when it comes to ingredients, with a commitment to putting customers first.

103. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

104. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

105. Plaintiff hereby provides notice to Defendant that it breached the express and implied

warranties associated with the Product.

106. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

107. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

108. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label.

109. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained cream, understood as dairy ingredients based on milkfat, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

110. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

111. Defendant had a duty to truthfully represent the Product, which it breached.

112. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted family company, known for its transparency to consumers, and not sacrificing quality when it comes to ingredients, with a commitment to putting customers first.

113. Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and

commitments to quality, transparency and putting customers first, that it has been known for.

114. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

115. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

116. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

117. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

118. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained cream, understood as dairy ingredients based on milkfat.

119. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity or deception, through statement and omission, of the representations.

120. Defendant knew of the issues described here yet did not address them.

121. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

122. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
6. Other and further relief as the Court deems just and proper.

Dated: March 6, 2022

Respectfully submitted,

/s/Spencer Sheehan

Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com