UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESSICA SNEED,<br><br>    Plaintiff,<br><br>    v.<br><br>FERRERO U.S.A., INC.,<br><br>    Defendant. | No. 22 CV 1183<br><br>Judge Manish S. Shah |

ORDER

Defendant's motion to dismiss for failure to state a claim, [12], is granted. Plaintiff's claim for negligent misrepresentation is dismissed with prejudice; all other claims are dismissed without prejudice. Plaintiff has leave to file an amended complaint that cures the defects in her complaint by March 15, 2023. If no amended complaint is filed, the dismissal will convert to a dismissal with prejudice and the clerk will enter final judgment in favor of defendant.

STATEMENT

Plaintiff Jessica Sneed alleges that the Kinder Joy eggs made by defendant Ferrero U.S.A., Inc., have deceptive and misleading packaging because the label describes the candy as "sweet cream topped with cocoa wafer bites," when, in fact, the "cream" is made of vegetable oils, skim milk powder and whey proteins. [1] ¶¶ 1, 25–36.[1] Sneed bases her claims on the proposition that "cream" means a dairy product with a high fat content of at least 18% milkfat and points to five dictionary definitions and one FDA regulation. [1] ¶¶ 6–14. Sneed believes that Ferrero violates the Illinois Consumer Fraud Act's prohibition on deceptive practices by selling Kinder Joys that purport to be "cream" and are in fact made with vegetable oils, a product known as "artificial cream." [1] ¶¶ 16–18, 25–30, 80–85. She also brings claims for breach of warranty, negligent misrepresentation, fraud, and unjust enrichment. [1] ¶¶ 95–122.[2] Sneed seeks to represent a class of Illinois consumers as well as a multi-state class of Arkansas, Montana, Nebraska, Virginia, Georgia, and Minnesota consumers.

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers refer to the CM/ECF header placed at the top of filings.

[2] A claim for breach of contract was withdrawn. [15] at 8, fn. 1.

[1] ¶¶ 72, 86–90. Defendant moves to dismiss the complaint for failure to state a claim, and to dismiss Sneed's claim for injunctive relief for lack of jurisdiction. [13].

I.     **Legal Standard**

"To survive a motion to dismiss, a plaintiff need allege 'only enough facts to state a claim to relief that is plausible on its face.'" *Barwin v. Village of Oak Park*, 54 F.4th 443, 453 (7th Cir. 2022) *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court reviewing a Rule 12(b)(6) motion to dismiss accepts as true all well-pled facts alleged in the complaint and determines whether "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barwin*, 54 F.4th at 453 *citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (other citations omitted). "Legal assertions or recital of the elements of a cause of action supported by mere conclusory statements," however, do not receive the presumption of truth. *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014).

Claims of common-law fraud or deceptive practices under ICFA require the plaintiff to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). The plaintiff must allege the "who, what, when, where, and how" of the alleged fraud. *Id*.

II.     **Analysis**

    A.     **ICFA Claim**

The Illinois Consumer Fraud Act, like the Federal Trade Commission Act, "broadly prohibit[s] unfair business practices." *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474 (7th Cir. 2020). One of the claims under the Act is a deceptive-practices claim, where a plaintiff must show: "(1) a deceptive act or practice by defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." *DeBouse v. Bayer AG*, 235 Ill.2d 544, 550 (2009); *accord Ambrosius v. Chicago Athletic Clubs, LLC*, 2021 IL App (1st) 200893, ¶ 22 (opinion has not yet been released for publication, subject to revision or withdrawal) *appeal denied*, 184 N.E.3d 989 ( 2022). In the context of deceptive labeling or advertising, "plaintiffs' claim survives [a motion to dismiss] if they have plausibly alleged that the defendants' front labels likely lead a significant portion of reasonable consumers to falsely believe something that the back labels belie." *Bell*, 982 F.3d at 476. In making such a determination, "the context of the entire packaging is relevant," but "an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers." *Id*. The foremost consideration is "how real consumers understand and react to the advertising." *Id*.

Whether a statement is deceptive is usually an issue of fact. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). However, when a deceptive advertising claim is based "on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may be justified." *Bell*, 982 F.3d at 477–78. Examples of unreasonable or fanciful interpretations include a suit that alleged that the labels "Original Sundae Cone," "Original Vanilla," and "Classic" implied that the ice cream treat was more wholesome or nutritious than competitors, *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 Fed. App'x 113, 115 (9th Cir. 2012), or suits that alleged that bagel bite snacks labeled "made with real cheese" were deceptive because the cheese blend also contained starch, nonfat milk, and whey. *See Jackson v. Kraft Heinz Foods Co.*, 2022 WL 4591749 (N.D. Ill. Aug. 3, 2022) *and Lemke v. Kraft Heinz Foods Co.*, 2022 WL 1442922 (W.D. Wis. May 6, 2022).

Sneed's central claim is that "Sweet Cream" is false, deceptive, and misleading because Kinder Joys don't contain "cream" made of at least 18% milkfat. [1] ¶ 5. However, in her complaint she recognizes there exists a food substance known as "artificial cream," where the milkfat is replaced with vegetable oils. [1] ¶¶ 16–18. The claim that Kinder Joys contain "cream" is not false—they contain artificial cream. But a statement can still be misleading even if it is not literally false. *Beardsall*, 953 F.3d at 973. The next question is whether "cream" has such a singular and pervasive meaning among the general consuming public that most consumers believe it to only mean a dairy product with 18% milkfat content and are therefore likely to be misled by Kinder Joy's packaging. *Id.* at 972.

Sneed fails to allege that a significant portion of the general consuming public understands "cream" to mean a dairy product with 18% milkfat. In support of her claims, she cites to five dictionary definitions of cream as a thick liquid, taken from milk that contains a lot of dairy fat. [1] ¶¶ 7–11. The FDA defines cream as "the liquid milk product high in fat separated from milk which may have been adjusted by adding thereto: Milk, concentrated milk, dry whole milk, skim milk, concentrated skim milk, or nonfat dry milk. Cream contains not less than 18 percent milkfat." 21 C.F.R. § 131.3(a). Finally, Sneed alleges she herself purchased a Kinder Joy egg because she thought it contained cream which had a milkfat content of at least 18 percent. [1] ¶¶ 62–63. Although allegations about the results of consumer surveys are not required as a matter of federal notice pleading, allegations about how the general consuming public understands the term "cream" is the kind of thing that makes plausible the conclusory allegation that "sweet cream" is misleading. *See, e.g.*, *Bell*, 982 F.3d at 482 (allegations regarding plain meaning, plaintiffs' surveys of customers, and affidavits from linguists support claim that reasonable consumer is likely to be misled).

Deceptive practices claims are subject to the heightened Rule 9(b) pleading standard, and Sneed has failed to adequately allege the "how"—how is Kinder Joy's labeling likely to mislead most consumers. She alleges that more than half of the package is white and has two large "drops" of milk and that the front of the package

3

says "sweet cream." [1] ¶¶ 1–4. On the other hand, the back of a Kinder Joy has an ingredient list that does not include "milk," "whole milk," or any other indication that it is a dairy product with at least 18% milkfat. [1] ¶ 25. An accurate ingredient list does not immunize a defendant from a deceptive front label, but the ingredient list is one piece of "all the information available to consumers" and is therefore relevant to determining whether reasonable consumers would be misled. *See Bell*, 982 F.3d at 477. Finally, there exist other candies labeled "cream" which are instead made of artificial cream—Goetze's "Caramel Creams" (made since 1895), "Cookies 'n Cream Bites," and Twizzlers' "Filled Twists" that are "orange cream pop" flavor.[3] Taking into account the existence of other candies made with artificial cream and advertised as "cream," and the lack of allegations regarding how most consumers understand the word "cream," Sneed has failed to push her allegations beyond an "unreasonable and fanciful interpretation" of the Kinder Joy label.[4] Something more than dictionary definitions needs to be pled to show that it is plausible that a reasonable consumer

---

[3] Defendants moved for judicial notice of packaging and ingredient lists of various foodstuffs. [14]. Plaintiff did not object and refers to the images in her response brief. Because it is easily ascertained whether the images are accurate representations of the product and its packaging, they are not subject to reasonable dispute and I take judicial notice of those labels I find to be relevant. Fed. R. Evid. 201(b); *see also General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081–82 (7th Cir. 1997).

[4] Sneed argues that most candies made with artificial cream use the word "crème" and the candies that use "cream" have cream or whole milk powder. [15] at 11. Sneed cites to the Merriam-Webster dictionary for the definition of crème as "a very sugary, fluffy white cream derivative," but an online search of the Merriam-Webster dictionary shows two definitions of "crème": "(1) a sweet liqueur; 2: a cream or a preparation made with or resembling cream used in cooking." *See Crème*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/creme (last visited Feb. 13, 2023). Sneed is correct that many of the candies are labelled "crème," but there are three candies that use "cream" and have a vegetable oil as one of the first four ingredients. [14] at 18–19. Order of the ingredients is indicative of the amount of each ingredient in the product. *See* FDA, *Overview of Food Ingredients, Additives & Colors,* https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors. (last visited Feb. 14, 2022). Orange-cream-pop flavored Twizzlers are made of "corn syrup, sugar, enriched wheat flour, vegetable oil" and no dairy. [14] at 18. The ingredient list of Goetze's Caramel Creams has highly refined coconut oil before any dairy product. [14] at 18. The white confectionary coating in Cookies 'n Cream Bites is made of "sugar, palm kernel oil, whole milk powder, reduced mineral whey powder, nonfat milk powder, soy lecithin, salt, and vanilla." [14] at 19. None of these ingredient lists are substantially different than that of Kinder Joys, where sugar, vegetable oils, and skim milk powder are the first three ingredients. [1] ¶ 25. All of the candies have some kind of vegetable oil listed before a dairy ingredient. Finally, Sneed has not alleged that most consumers have a different understanding of "crème" versus "cream," such that seeing that term on a label would lead them to a different conclusion about the ingredients in the product.

4

would be deceived by the word "cream." Sneed's ICFA deceptive practices claim is dismissed without prejudice.

### B.   Warranty Claims

Sneed brings three warranty claims in the same count. The first is a state-law express warranty claim (presumably under 810 ILCS 5/2-313); the second is an implied warranty of merchantability/fitness for a particular product claim (presumably under 810 ILCS 5/2-314–15); the third is a general claim of a warranty under the federal Magnuson–Moss Act. [1] ¶¶ 95–110. Because Sneed has not adequately alleged that Ferrero, U.S.A., Inc. failed to provide what it advertised or what a reasonable consumer would expect from the term "sweet cream" on a candy bar, all of her warranty claims are lacking.

One type of express warranty is a "description of the good which is made part of the basis of the bargain." 810 ILCS 5/2-313(1)(b). "In a breach of express warranty action under the UCC, plaintiff must show a breach of an affirmation of fact or promise that was made a part of the basis of the bargain" and it is "the language of the warranty itself [t]hat controls and dictates the obligations and rights of the various parties." *Hasek v. DaimlerChrysler Corp.*, 319 Ill.App.3d 780, 788 (1st Dist. 2001) (internal citations omitted). The language of the warranty, here the packaging, is solely that the candy has "sweet cream" and Sneed has not alleged that Ferrero failed to provide a "sweet cream" candy. Furthermore, as with all of her warranty claims, she has not alleged that she gave pre-suit notice to Ferrero U.S.A., Inc. that she found the Kinder Joy egg to be in breach of its warranted qualities. *See* 810 ILCS 5/2-607(3)(a) ("Where a tender has been accepted, the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."). Sneed argues that the filing of her suit provided notice of breach, [15] at 16–17, but only consumers who have suffered a personal injury can provide notice of breach of warranty by filing a complaint. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.3d 482, 494–95 (1996). Sneed has failed to allege two elements of a breach of an express warranty claim, so the claim is dismissed.

Implied warranty of merchantability and warranty of fitness for a particular product are two different claims, with their own elements and pleading requirements. *See* 810 ILCS 5/2-314 *and* 5/2-315. A claim of breach of implied warranty of merchantability requires: (a) a sale of goods, (b) by a merchant of those goods, and (c) the goods were not of merchantable quality. *Brandt v. Boston Scientific Corp.*, 204 Ill.2d 640, 645 (2003). Furthermore, a plaintiff must show that the seller-defendant is a "merchant [with a] professional status as to a particular kind of goods, which is narrower than the general definition of merchant found in section 2-104." *Id.* at 646. An implied warranty of fitness for a particular purpose arises "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or

5

furnish suitable goods." 810 ILCS 5/2-315. When it comes to purely economic loss, implied warranties under article II of the Uniform Commercial Code (on which Illinois's law is modeled) "give a buyer of goods a potential cause of action *only against his immediate seller.*" *Rothe v. Maloney Cadillac, Inc.*, 119 Ill.2d 288, 292 (1988) (emphasis added). Ferrero U.S.A., Inc. did not directly sell Kinder Joys to Sneed, so she cannot allege that she is in privity with it.

There are two exceptions to the privity requirement: "(a) where there is a direct relationship between the manufacturer and the seller, or (b) where … the manufacturer knew the identity, purpose, and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements." *Frank's Maint. & Eng'g, Inc v. C.A. Roberts Co.*, 86 Ill.App.3d 980, 992–93 (1st Dist. 1980) (internal citations omitted). Sneed alleges that "Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing" and "Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires." [1] ¶¶ 96–97. These are "legal assertions or recital of the elements of a cause of action supported by mere conclusory statements" that do not merit the presumption of truth on a Rule 12(b)(6) motion to dismiss. *Vesely*, 762 at 661. Because Sneed has not adequately alleged a direct relationship with Ferrero U.S.A., Inc. her claims of breach of an implied warranty are dismissed.

Finally, Sneed brought a claim under the Magnuson–Moss Warranty Act, citing generally to the federal statute, 15 U.S.C. §§ 2301 *et seq*. [1] at 11. There is more than one kind of warranty claim under Mag–Moss, but Sneed does not specify her theory. In any case, the fact that she has not alleged that Ferrero U.S.A., Inc. made any kind of promise that it did not fulfill dooms her claims, whether she is claiming breach of an implied warranty as defined by state law or an express warranty as defined by Mag–Moss. *See Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) (Mag–Moss implied warranty claims fall and rise with state-law implied warranty claim). Sneed's warranty claims are dismissed without prejudice.

### C.    Negligent Misrepresentation

Sneed brings a state-law claim for negligent misrepresentation, which requires a plaintiff to plead and prove: "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining truth of the statement; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill.2d 326, 334–35 (2006). Illinois courts have recognized a duty to communicate accurate information in order "to avoid negligently conveying false information that results in physical injury to a person or harm to property" or where "one is in the business of supplying information for the

6

guidance of others in their business transactions." *Brogan v. Mitchell Intern., Inc.*, 181 Ill.2d 178 183–84 (1998) *citing in part Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 89 (1982). The limitation on the duty to provide accurate information (and thus liability for the tort of negligent misrepresentation) is an example of the economic loss doctrine, which holds that remedies for economic losses should be obtained through contract claims, not tort claims. *See Brogan*, 181 Ill.2d at 185.

Because Sneed has failed to allege that Kinder Joy's packaging contains a false statement of material fact, as discussed above, she has failed to allege a claim for negligent misrepresentation. Sneed's claim for negligent misrepresentation, however, is further barred by the fact that Ferrero U.S.A., Inc. does not owe her a duty to communicate accurate information. Sneed has not alleged, and cannot allege, physical injury due to Kinder Joy's "sweet cream" label. She argues that Ferrero U.S.A., Inc. had a duty to communicate accurate information because it held "itself out as having special knowledge and experience in this area, a trusted family company, known for its transparency to consumers." [1] ¶ 112; *see also* [15] at 17–18. This is insufficient to show that Ferrero U.S.A., Inc. has an extra-contractual duty of the type recognized by *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, which held that accountants have a duty to their clients that engenders tort liability. 159 Ill.2d 137, 162–65 (1994). The Illinois Supreme Court there relied on the fact that the accountant must make his own decisions regarding significant matters for his client and, as with attorneys, his professional judgment and agency give rise to an extra-contractual duty to his client. *Congregation of the Passion*, 159 Ill.2d at 162–63. Ferrero, U.S.A., Inc. does not exercise the same kind of judgment or agency with regard to their "client," a consumer making the decision of whether or not to buy a particular candy.

Illinois courts have retained the economic loss doctrine for tort claims against professionals who, although they may provide guidance to others, create a tangible product under the theory that the client can examine the product to determine whether it complies with the professional's representations. *See Martusciello v. JDS Homes, Inc.*, 361 Ill.App.3d 568, 573 (1st Dist. 2005) (architects); *2134 Lincoln Park West Ass'n v. Mann*, 136 Ill.2d 302, 312 (1990) (architects); *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 281 Ill.App.3d 789, 797–98 (1st Dist. 1996), *aff'd* 176 Ill.2d 160 (1997) (building engineer). A Kinder Joy is a tangible product that can be reviewed to determine whether it complies with the representations made by its packaging. And after review, a consumer can exercise her own judgment in deciding whether or not to purchase the candy egg. Therefore, Sneed cannot allege a claim for negligent misrepresentation—to the extent she has a claim against Ferrero U.S.A., Inc., her remedy must come from consumer protection statutes or contract claims. Sneed's claim for negligent misrepresentation is dismissed with prejudice.

### D. Fraud

One type of Illinois common law fraud is a misrepresentation where the defendant (1) made a false statement of material fact, (2) knew the statement was false, (3) intended that the statement induce the plaintiff to act, (4) plaintiff did act in reliance on the statement, and (5) plaintiff was damaged from her reliance on the statement. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 496 (1996). "A successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference." *Id.* at 496–97. As discussed above, Sneed has failed to plausibly allege *how* the Kinder Joy label is likely to mislead a reasonable consumer; her claim for fraud is dismissed without prejudice.

### E. Unjust Enrichment

"If an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Because Sneed has not adequately alleged that Ferrero U.S.A., Inc. has engaged in improper conduct, her unjust enrichment claim is dismissed without prejudice.

### F. Injunctive Relief

Because Sneed has failed to allege a plausible claim for relief, her request for injunctive relief is similarly dismissed without prejudice.

All of Sneed's claims except for negligent misrepresentation are dismissed without prejudice. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily … a plaintiff whose original complaint has been dismissed under Rule 12(b0(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.").

ENTER:

Date: February 15, 2023

Manish S. Shah
U.S. District Judge

8